ROBERT ANTHONY EMERT (Pro Se)

2351 Vista Lago Terrace

Escondido, CA 92029

Telephone: (760) 612-9328

Email: robemert@msn.com

*Petitioner Pro Se*


FILED

NOV 2 5 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___JOE___ _____DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ANTHONY EMERT,<br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CHILD SUPPORT SERVICES; DAVID S. SCHULMAN; SARA BEAR; ANDREA SCHUCK; and DOES 1-50,<br>Defendants. | Case No. 3:24-cv-02072-CAB-JLB<br><br>PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) BASED ON INTERVENING NINTH CIRCUIT<br><br>*Miroth v. County of Trinity, 136 F.4th 1141 (9th Cir. 2025)*<br><br>AUTHORITY AND EXTRAORDINARY CIRCUMSTANCES<br><br>[Declaration of Robert Emert and Exhibits A-P in Support FILED UNDER SEPARATE COVER] |

**Date:** To be set by the Court

**Time:** To be set by the Court

**Courtroom:** TBD

**Judge:** CATHY ANN BENCIVENGO

**CASE-AT-A-GLANCE**

## Motion for Relief from Judgment Under FRCP 60(b)(6)

### THE INTERVENING LAW: MIROTH V. COUNTY OF TRINITY

On May 8, 2025, the Ninth Circuit issued Miroth v. County of Trinity, 136 F.4th 1141 (9th Cir. 2025), holding that Rooker-Feldman does NOT bar federal claims when plaintiffs allege misconduct by ADVERSE PARTIES (not state court error) and seek MONEY DAMAGES (not reversal of state judgment). This decision directly undermines the basis for this Court's November 26, 2024 dismissal order.

### Under Miroth:

- Rooker-Feldman applies only to claims alleging STATE COURT ERROR, not misconduct by adverse parties

- Federal courts have jurisdiction when plaintiffs seek MONEY DAMAGES for fraud committed by adverse parties

- Claims based on legal wrongs that PRECEDED the state court order are within federal jurisdiction

- Extrinsic fraud (preventing party from presenting case) does NOT implicate Rooker-Feldman

### WHAT PLAINTIFF SEEKS UNDER MIROTH

Plaintiff does NOT seek to reverse or set aside the California state court judgment. Instead, consistent with Miroth, Plaintiff seeks:

- MONEY DAMAGES against David S. Schulman, Sara Bear, and Andrea Schuck for their independent torts of fraud, abuse of process, and civil rights violations

- INJUNCTIVE RELIEF against California Department of Child Support Services (DCSS) to halt enforcement of support order obtained through documented fraud

- DECLARATORY RELIEF that the adverse parties committed extrinsic fraud

## THE DOCUMENTED FRAUD: SCHULMAN'S OWN WORDS

February 24, 2021 (Exhibit E): Schulman files court memorandum admitting Plaintiff's "real estate license lapsed," "contractor's license lapsed," and Plaintiff "has not worked since..."

October 20, 2021 (Exhibit H): Schulman emails Plaintiff 40 days before trial: "Mr. Emert, I find it Ironic that you of all people are telling someone to do their job when you do not even have one."

November 29, 2021 (Exhibit A): Despite this documented knowledge, Schulman submits evidence at a default trial—from which Plaintiff was excluded due to a near-fatal heart attack—that results in an $8,010 monthly income imputation based on the same employment Schulman twice admitted did not exist.

February 9, 2022 (Exhibit F): Schulman's office serves the judgment but OMITS the mandatory DissoMaster calculation—the document that would have revealed the fraudulent income figure. Consciousness of guilt.

## THE FRAUD WAS EXTRINSIC: PLAINTIFF WAS SYSTEMATICALLY EXCLUDED

This is not intrinsic fraud where a party had opportunity to rebut false statements. Plaintiff was SYSTEMATICALLY EXCLUDED from the November 29, 2021 trial despite:

**Seven Documented Attempts to Participate (September 30 - November 29, 2021):**

1. September 30, 2021: ER email to all parties notifying of near-fatal STEMI heart attack (Ex. C) — IGNORED

2. November 10, 2021 (19 days before trial): ADA accommodation request with doctor's note (Ex. I) — IGNORED

3. November 15, 2021 (14 days before trial): Doctor's note sent to all parties (Ex. J) — IGNORED

4. November 22, 2021 (7 days before trial): Trial continuance request under CRC 3.1332 citing "cardiac issues from recent heart attack" (Ex. K) — IGNORED

5. November 23, 2021 (6 days before trial): Schulman files Motion in Limine to EXCLUDE Plaintiff's evidence while Plaintiff is medically incapacitated (Ex. O)

6. November 24, 2021 (5 days before trial): Formal ex parte application under CRC 3.1332 requesting continuance (Ex. L) — DENIED on morning of trial

7. November 29, 2021 (morning of trial): Email to clerk asking "Am I being admitted to my ex parte hearing?" (Ex. M) — NO RESPONSE; trial proceeds at 11:30 a.m.

**RESULT: Trial conducted in Plaintiff's complete absence. Plaintiff never had opportunity to rebut Schulman's false income representations. This is textbook EXTRINSIC FRAUD under Miroth and Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004).**

Court's Own Acknowledgment (October 4, 2021, Exhibit N): "father appeared on the phone and represented he had a heart attack... This is not a change of custody but merely a continuance to give father the ability to present his case." Yet the court proceeded to trial less than two months later without granting any meaningful opportunity for Plaintiff to participate.

## INDEPENDENT LAW ENFORCEMENT CORROBORATION

Deputy District Attorney Investigator Luis Pena made devastating admissions in a recorded conversation (Exhibit P):

- Minor's counsel "lined up with your ex-wife" and Schulman instead of advocating independently (at 45)

- They were "trying to put something together" against Plaintiff (at 45)

- Family court attorneys "keep pushing our attorneys" (DA's office) to file criminal charges (at 168)

- When asked what Plaintiff did to lose his parental rights: "You pissed them off." (at 92-93)

- "The DA's office should never have accepted your case." (at 154)

- "That's you as a dad fighting a family court" (at 167)

**This independent corroboration proves the fraud was deliberate, coordinated, and retaliatory—not mistake.**

## WHY THIS CASE FALLS SQUARELY WITHIN MIROTH

### 1. Misconduct By Adverse Parties, Not State Court Error

Plaintiff does not allege the state court judges made legal errors. Plaintiff alleges Schulman, Bear, and Andrea Schuck committed independent legal wrongs:

- Knowingly submitted false income data despite documented knowledge of unemployment

- Concealed the DissoMaster calculation that would have exposed the fraud

- Systematically prevented Plaintiff from participating through denial of accommodations

Under Miroth: "If a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." 136 F.4th at 1150.

### 2. Plaintiff Seeks Money Damages, Not Reversal

The Miroth plaintiffs avoided Rooker-Feldman by "dropping any request to reinstate their parental rights" and seeking "only money damages." 136 F.4th at

1146. Plaintiff follows this exact approach. Plaintiff does NOT ask this Court to reverse, set aside, or declare void the state court judgment.

### 3. The Fraud Preceded the State Court Order

Schulman's February 2021 admission, October 2021 email, November 2021 exclusion of Plaintiff from trial, and February 2022 concealment of the DissoMaster all PRECEDED or accompanied the January 24, 2022 judgment. These are "legal wrongs by adverse parties that preceded the issuance of the state court order." Miroth, 136 F.4th at 1145.

### 4. Unlike Miroth, This Case Involves Clear Extrinsic Fraud

Judge VanDyke's dissent in Miroth argued Rooker-Feldman should apply when plaintiffs "disclaim" extrinsic fraud. 136 F.4th at 1162. But Plaintiff does NOT disclaim extrinsic fraud—Plaintiff AFFIRMS it through seven documented exclusionary acts. This makes Plaintiff's case an even stronger candidate for federal jurisdiction than Miroth itself.

### THE BOTTOM LINE

Miroth clarifies that federal courts have jurisdiction over fraud claims against adverse parties when the plaintiff seeks money damages rather than reversal of the state judgment. This Court dismissed Plaintiff's claims based on a Rooker-Feldman analysis that Miroth now directly contradicts. Rule 60(b)(6) relief is warranted.

### RELIEF REQUESTED

8.  Vacate the November 26, 2024 dismissal order under FRCP 60(b)(6)

9.  Reopen Case No. 3:24-cv-02072-CAB-JLB and restore it to the active docket

10. Grant leave to file an Amended Complaint adding Schulman, Bear, and Schuck for money damages claims

11. Declare that extrinsic fraud occurred, due process was violated, and federal jurisdiction exists under Miroth

12. Issue preliminary injunction enjoining DCSS from enforcing child support order pending resolution

13. Award costs of this motion

14. Grant such other relief as the Court deems just and proper

## Contents

CASE-AT-A-GLANCE ........................................................................................................... 2
    THE INTERVENING LAW: MIROTH V. COUNTY OF TRINITY ................................ 2
    WHAT PLAINTIFF SEEKS UNDER MIROTH ................................................................. 2
    THE DOCUMENTED FRAUD: SCHULMAN'S OWN WORDS ................................... 3
    THE FRAUD WAS EXTRINSIC: PLAINTIFF WAS SYSTEMATICALLY
    EXCLUDED ........................................................................................................................... 3
    INDEPENDENT LAW ENFORCEMENT CORROBORATION ................................... 4
    WHY THIS CASE FALLS SQUARELY WITHIN MIROTH .......................................... 5
        1. Misconduct By Adverse Parties, Not State Court Error .......................................... 5
        2. Plaintiff Seeks Money Damages, Not Reversal ....................................................... 5
        3. The Fraud Preceded the State Court Order .............................................................. 6
        4. Unlike Miroth, This Case Involves Clear Extrinsic Fraud .................................... 6
    THE BOTTOM LINE ........................................................................................................... 6
    RELIEF REQUESTED ......................................................................................................... 6
    I. NOTICE OF MOTION AND MOTION ........................................................................ 9
    II. MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 10
        A. INTRODUCTION ..................................................................................................... 10
        B. FACTUAL BACKGROUND ................................................................................... 12
        C. LEGAL STANDARD ............................................................................................... 21
        D. ARGUMENT ............................................................................................................. 25
        E. CONCLUSION .......................................................................................................... 30
        F. RELIEF REQUESTED ............................................................................................. 31
    III. DECLARATION OF ROBERT EMERT IN SUPPORT OF MOTION FOR RELIEF
    FROM JUDGMENT ............................................................................................................ 33
PROOF OF SERVICE ............................................................................................................ 38

## I. NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on a date and time to be set by this Court, in the courtroom of the Honorable Cathy Ann Bencivengo, located at 333 West Broadway, San Diego, California 92101, Plaintiff Robert Emert will move this Court for an order:

1. **Vacating** this Court's November 26, 2024 Order dismissing this action (ECF No. 5) pursuant to Federal Rule of Civil Procedure 60(b)(6), based on the Ninth Circuit's intervening decision in *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025);

2. **Reopening** Case No. 3:24-cv-02072-CAB-JLB and restoring it to the active docket;

3. **Granting leave** to file a Second Amended Complaint asserting claims for **money damages** against David S. Schulman, Sara Bear, and Andrea Schuck for fraud and civil rights violations arising from their misconduct in obtaining the underlying state court judgment;

4. **Enjoining** the California Department of Child Support Services from enforcing the child support order pending resolution of this matter; and

5. **Declaring** that Schulman, Bear, and Schuck committed extrinsic fraud that prevented Plaintiff from presenting his case in the underlying state court proceedings.

This Motion is made pursuant to Federal Rule of Civil Procedure 60(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Robert Emert, Exhibits A through P, the entire record in this case, and on such oral and documentary evidence as may be presented at the hearing.

**DATED:** November 25, 2025

Respectfully submitted,

/s/ Robert Emert **ROBERT EMERT** Plaintiff, Pro Se 2351 Vista Lago Terrace Escondido, CA 92029 Tel: (760) 612-9328 Email: robemert@msn.com

## II. MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

This Motion seeks relief from this Court's November 26, 2024 dismissal order under Federal Rule of Civil Procedure 60(b)(6), based on the Ninth Circuit's intervening decision in *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025). *Miroth* directly addresses the jurisdictional question on which this Court dismissed Plaintiff's claims: whether federal courts have subject matter jurisdiction over fraud claims against adverse parties in family court proceedings.

The answer is yes. *Miroth* holds that Rooker-Feldman does not bar federal claims when a plaintiff alleges **misconduct by adverse parties**—rather than error by the state court—and seeks **money damages** rather than reversal of the state judgment. 136 F.4th at 1152. This is precisely Plaintiff's case.

**What Plaintiff Seeks Under *Miroth*:**

Plaintiff does not ask this Court to reverse or set aside the California state court judgment. Instead, consistent with *Miroth*, Plaintiff seeks:

- **Money damages** against David S. Schulman, Sara Bear, and Andrea Schuck for their independent torts of fraud, abuse of process, and civil rights violations;
- **Injunctive relief** against DCSS to halt enforcement of a support order obtained through documented fraud; and
- **Declaratory relief** that the adverse parties committed extrinsic fraud.

**The Fraud Is Documented By The Fraudsters' Own Admissions:**

- **February 24, 2021:** Schulman filed a court memorandum admitting Plaintiff's "real estate license lapsed," "contractor's license lapsed," and Plaintiff "has not worked since..." (Declaration of Robert Emert ("Emert Decl.") ¶ 3, Ex. E.)

- **October 20, 2021:** Schulman emailed Plaintiff: "Mr. Emert, I find it Ironic that you of all people are telling someone to do their job when **you do not even have one**." (Emert Decl. ¶ 4, Ex. H.)

- **November 29, 2021:** Despite this documented knowledge, Schulman submitted evidence at a default trial—from which Plaintiff was excluded due to a near-fatal heart attack—that resulted in an **$8,010 monthly income imputation** based on the same employment Schulman twice admitted did not exist. (Emert Decl. ¶ 8, Ex. A.)

- **February 9, 2022:** Schulman's office served the judgment but **omitted the mandatory DissoMaster calculation**—the document that would have revealed the fraudulent income figure. (Emert Decl. ¶ 9, Ex. F.)

## The Fraud Was Extrinsic—Plaintiff Was Prevented From Participating:

This is not a case of "intrinsic fraud" where a party had the opportunity to rebut false statements in court. Plaintiff was **systematically excluded** from the November 29, 2021 trial despite:

- Suffering a near-fatal STEMI heart attack on September 29, 2021 (Ex. B);
- Notifying Schulman and Bear from the emergency room on September 30, 2021 (Ex. C);
- Making **seven documented attempts** to participate between September 30 and November 29, 2021, including ADA accommodation requests, doctor's notes, and formal continuance motions (Exs. I, J, K, L, M, N, O);
- The court's own October 4, 2021 acknowledgment that Plaintiff had a heart attack and this was "merely a continuance to give father the ability to present his case" (Ex. N).

Every attempt was ignored or denied. The trial proceeded in Plaintiff's absence.

## Independent Law Enforcement Corroboration:

Deputy District Attorney Investigator Luis Pena, in a recorded conversation, confirmed:

- Minor's counsel **"lined up with your ex-wife"** and Schulman rather than independently advocating for the child;
- They were **"trying to put something together"** against Plaintiff;
- Family court attorneys **"keep pushing our attorneys"** (the DA's office) to file criminal charges;
- When Plaintiff asked what he did to lose his parental rights: **"You pissed them off."**
- **"The DA's office should never have accepted your case."**

(Emert Decl. ¶¶ 11-17, Ex. P.)

This independent corroboration proves the fraud was deliberate, coordinated, and retaliatory—not mistake.

## B. FACTUAL BACKGROUND

### 1. Plaintiff's Employment Status and the Underlying State Proceedings

Plaintiff was unemployed and serving as a stay-at-home father for nearly a decade prior to the 2019 divorce filing in San Diego Superior Court Case No. 19FL010852N. (Emert Decl. ¶ 2.) During the marriage, Plaintiff became the primary caregiver for the parties' son, Bryce, who has autism spectrum disorder. Plaintiff transitioned to being a stay-at-home father beginning around 2012—approximately seven years before the divorce filing. His California real estate license and contractor's license had lapsed years earlier due to non-use, and he had no current income. (Emert Decl. ¶ 2.)

Family Court Services consistently recommended a 50/50 custody arrangement for approximately two years during the divorce proceedings (2019-2021). (Emert Decl. ¶ 2.)

### 2. Schulman's Documented Knowledge of Plaintiff's Unemployment

On **February 24, 2021**, David S. Schulman—attorney for Andrea Schuck (Plaintiff's ex-wife)—filed a memorandum with the San Diego County Superior Court explicitly acknowledging:

> "Respondent's real estate license lapsed… Respondent's contractor's license lapsed… Respondent has not worked since…"

(Emert Decl. ¶ 3, Ex. E.) This document proves that Schulman knew, no later than February 2021, that Plaintiff had no valid professional licenses and no current employment.

Eight months later, on **October 20, 2021**—just **forty days before the November 29, 2021 trial**—Schulman sent Plaintiff an email stating:

> "Mr. Emert, I find it Ironic that you of all people are telling someone to do their job when **you do not even have one**."

(Emert Decl. ¶ 4, Ex. H.) This email confirms that Schulman's knowledge of Plaintiff's unemployment was current and accurate as of October 2021, well into the litigation and shortly before trial.

### 3. Timeline of Schulman's Documented Fraud

| Date | Event | Evidence |
|------|-------|----------|
| Feb 24, 2021 | Schulman files memo admitting Plaintiff's unemployment and lapsed licenses | Ex. E |

| Date | Event | Evidence |
|------|-------|----------|
| Sept 29, 2021 | Plaintiff suffers near-fatal STEMI heart attack | Ex. B |
| Sept 30, 2021 | Plaintiff notifies Schulman/Bear from ER of heart attack | Ex. C |
| Oct 4, 2021 | Court acknowledges heart attack, promises "continuance to give father ability to present case" | Ex. N |
| Oct 20, 2021 | Schulman emails: "you do not even have one [job]" | Ex. H |
| Nov 10-29, 2021 | Plaintiff makes 7 documented attempts to participate; all ignored/denied | Exs. I, J, K, L, M, O |
| Nov 29, 2021 | Default trial proceeds in Plaintiff's absence; $8,010/month income imputed despite Schulman's documented knowledge | Ex. A |
| Feb 9, 2022 | Schulman's office serves judgment but omits DissoMaster calculation | Ex. F |
| 2022-2024 | DCSS ignores 12+ review requests with documentary proof of fraud | Ex. D |

## 4. Plaintiff's Medical Emergency

On **September 29, 2021**, Plaintiff suffered a STEMI (ST-Elevation Myocardial Infarction) heart attack—a life-threatening cardiac event. (Emert Decl. ¶ 5, Ex. B.) He was rushed to the emergency room and remained hospitalized for several days.

On **September 30, 2021**—while still in the emergency room—Plaintiff sent an email to Schulman, his co-counsel Sara Bear, and the court notifying them of his medical emergency. (Emert Decl. ¶ 6, Ex. C.) Schulman and Bear had actual notice of Plaintiff's life-threatening medical condition **more than 60 days before the November 29, 2021 trial**.

On **October 4, 2021**, Plaintiff appeared by phone at a family court hearing before Judge Lorna Alksne. The court's minute order states:

"At 3:30 p.m., father appeared on the phone and represented he had a heart attack and was in the hospital. Father is ordered to turn over the minor to his mother forthwith. **This is not a change of custody but merely a continuance to give father the ability to present his case.**"

(Emert Decl. ¶ 6, Ex. N.) Despite this acknowledgment and stated intention to allow Plaintiff to present his case, the court proceeded to trial less than two months later without granting any meaningful opportunity for Plaintiff to participate.

*5. Plaintiff's Seven Documented Attempts to Participate (Extrinsic Fraud)*

Between September 30, 2021 and November 29, 2021, Plaintiff made at least **seven documented attempts** to participate in the proceedings, request accommodations, and obtain a trial continuance. Every attempt was ignored or denied. (Emert Decl. ¶ 7.)

### a. November 10, 2021 (19 days before trial) - ADA Accommodation Request

Plaintiff submitted a formal ADA accommodation request to the court, opposing counsel, and minor's counsel, including his doctor's recommendation for remote participation due to his cardiac condition:

> "Attached is: 1. Electronic proof of service for Judge Alksne's clerk that was left off last email in error. 2. ADA form for Rob Emert. 3. Medical Doctor recommendation for the ADA coordinator. 4. A copy of the writ that was proved in the email below."

(Emert Decl. ¶ 7, Ex. I.)

### b. November 15, 2021 (14 days before trial) - Doctor's Note to All Parties

Plaintiff sent an email to Schulman, Bear, minor's counsel (Matthew Cord and Catie Young), and the court with his doctor's note attached:

> "Attached in one document is: 1. My extension for my writ regarding needed corrections for the appellate court to review. 2. My doctors note. Although I not required to provide it, here it is. Thanks for your help in pushing a good father over the edge. Your parents must be so proud. 3. EPOS"

(Emert Decl. ¶ 7, Ex. J.)

### c. November 22, 2021 (7 days before trial) - Trial Continuance Request Under CRC 3.1332

Plaintiff sent a detailed email to all parties explicitly requesting a trial continuance based on his medical condition:

> "I attached is my doctor's letter that easily qualifies for a trial extension under 3.1332. I have another letter coming from a specialist as well... As

the doctor clearly indicates in the attached letter, **I am having cardiac issues from my recent heart attack**, so a trial continuance needs to be granted. I will be advising my witnesses and subpoenaed parties that do to my health issues the trial hearing has either been continued and or I can't currently proceed due to health-related issues."

(Emert Decl. ¶ 7, Ex. K.)

### d. November 23, 2021 (6 days before trial) - Schulman Files Motion in Limine

Rather than agreeing to a continuance based on Plaintiff's documented medical emergency, Schulman's office filed a Motion in Limine seeking to **exclude Plaintiff's evidence and testimony**, demonstrating intent to proceed to trial despite Plaintiff's incapacity:

> "From: Linda Hansen [Legal Assistant to David S. Schulman and Sarah Bear]… Subject: (IRMO Emert) Conformed pleadings… Attached please find copies of the following: 1. Motion in Limine to Exclude and/or Limit Respondent from Presenting Evidence at Trial; 2. Motion in Limine to Exclude Evidence and Testimony; 3. Proof of Electronic Service."

(Emert Decl. ¶ 7, Ex. O.)

### e. November 24, 2021 (5 days before trial) - Formal Ex Parte Application

Plaintiff filed an emergency ex parte application with the Superior Court requesting:

- Trial continuance under California Rule of Court 3.1332
- ADA accommodations for remote participation
- Relief under California Code of Civil Procedure § 473(b) to set aside orders entered while he was hospitalized

The ex parte declaration stated under oath:

> **"There simply is no burden of proof for the current orders that have taken away all of my parental rights and this would be devastating to Bryce and very damaging to Skylar as well. Both children need both parents, period… I was ONLY days out of the emergency room where I was clearly RAILROADED within a few weeks where all my parental rights were taken from me.** For the preceding two years, FCS recommended 50/50. **WHERE IS THE EVIDENCE TO SUGGEST ANYTHING OTHER THAN 50/50?"**

(Emert Decl. ¶ 7, Ex. L at 3.)

Judge Alksne **denied the ex parte on November 29, 2021—the morning of trial**—and the trial proceeded in Plaintiff's absence. (Emert Decl. ¶ 7, Ex. L at 1.)

### f. November 29, 2021 (morning of trial) - Final Attempt to Gain Access

At 9:23 a.m. on the morning of trial—thirty minutes before a scheduled 9:30 a.m. ex parte hearing—Plaintiff sent a desperate email to the court clerk asking:

> "Am I being admitted to my ex parte hearing today at 9:30AM? I have many waiting to be admitted. I submitted to the court a continuance request backed up by three doctor's letters and one of them being a cardiac specialist. What is the ruling on the continuance?"

(Emert Decl. ¶ 7, Ex. M.)

There is no evidence Plaintiff received any response. The trial proceeded without him at approximately 11:30 a.m. the same day. (Emert Decl. ¶ 8.)

### g. The Pattern Demonstrates Extrinsic Fraud

These seven documented attempts establish that Plaintiff was **systematically prevented from presenting his case**—the hallmark of extrinsic fraud. As the Ninth Circuit explained in *Miroth*:

> "Extrinsic fraud—'conduct which prevents a party from presenting his claim in court'—is a basis for setting aside a prior judgment."

136 F.4th at 1155 (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)).

Plaintiff did not have "ample opportunity" to rebut Schulman's false statements. He was excluded entirely.

### 6. *The Fraudulent Income Imputation*

On **November 29, 2021**, the San Diego County Superior Court conducted a default trial in Plaintiff's absence. Despite Schulman's documented knowledge—from his own February 2021 memo and October 2021 email—that Plaintiff was unemployed with lapsed licenses, Schulman submitted evidence and testimony that resulted in the court imputing income of **$8,010 per month** to Plaintiff. (Emert Decl. ¶ 8, Ex. A.)

This income imputation was based on:

- A job Plaintiff had not held for approximately a decade
- Expired California real estate and contractor licenses that Schulman himself had documented as lapsed
- Employment capacity Schulman knew did not exist

The court adopted Schulman's false income representation and entered judgment on **January 24, 2022**, imposing child support obligations of approximately **$1,714 per month** (approximately $2,000/month including other components) based on income Plaintiff never earned and could not earn. (Emert Decl. ¶ 8, Ex. A.)

### 7. Concealment of the DissoMaster Calculation

On **February 9, 2022**, Schulman's office served the judgment on Plaintiff via email. The proof of electronic service reveals that the **DissoMaster calculation**— the mandatory California software tool for calculating child support, which would have shown Plaintiff's actual income as $0 and exposed the fraudulent imputation—was **deliberately omitted** from the documents served on Plaintiff. (Emert Decl. ¶ 9, Ex. F.)

This omission violated California Family Code § 4056(a), which requires service of the DissoMaster calculation with the judgment, and prevented Plaintiff from immediately identifying the fraudulent income imputation and seeking timely relief in state court. (Emert Decl. ¶ 9.)

This concealment is further evidence of **consciousness of guilt**—Schulman's office knew the DissoMaster would expose the fraud, so they omitted it.

### 8. DCSS's Title IV-D Violations

Since January 24, 2022, the California Department of Child Support Services (DCSS) has enforced the fraudulent child support order. Between 2022 and 2024, Plaintiff sent at least **twelve written requests** to DCSS for administrative review of the support order under 45 CFR § 303.8(b)(2), providing:

- Schulman's February 2021 memo admitting unemployment and lapsed licenses
- Schulman's October 2021 email stating Plaintiff had no job
- Medical records documenting the September 2021 heart attack
- Evidence of his decade-long status as stay-at-home father caring for an autistic child

(Emert Decl. ¶ 10, Ex. D.)

**DCSS has ignored or summarily denied every request**, continuing to enforce child support based on income it knows—or should know—Plaintiff never earned and cannot earn. (Emert Decl. ¶ 10.) This ongoing enforcement violates Title IV-D's mandatory review and modification procedures. 45 CFR § 303.8(b)(2).

### 9. Independent Corroboration: The Pena Recording

**Independent corroboration of this pattern comes from a recorded conversation with Deputy District Attorney Investigator Luis Pena**, who made devastating admissions about Schulman's coordination and the retaliatory nature of the entire scheme. (Emert Decl. ¶¶ 11-17, Ex. P.)

### a. Minor's Counsel "Lined Up" With Schulman Instead of Advocating Independently

Investigator Pena stated:

> "I personally don't like some of them they really. They have biases because they'll start because right now I think **they lined up with your ex-wife**. I don't believe they're strictly just by themselves trying to do the best for him [Bryce]. **I think now they line together with your basically ex wives attorney and now they're trying to put something together.** I'm like that does not make sense to me when you have an attorney and basically that's supposed to be just a child's attorney."

(Emert Decl. ¶ 12, Ex. P at 45.)

This admission proves that:

1. Minor's counsel Matthew Cord **abandoned his duty** to represent only Bryce's best interests;
2. Cord instead **"lined up" with Andrea Schuck and her attorney (Schulman)**; and
3. **They were "trying to put something together"** against Plaintiff—a coordinated strategy rather than independent advocacy.

Pena further explained that minor's counsel **should have been talking to Plaintiff** rather than coordinating exclusively with opposing counsel:

> "It's like that attorney should be talking to you. It they should not just be trying to figure things out with other attorney and pushing, pushing and pushing and pushing."

(Emert Decl. ¶ 13, Ex. P at 45-46.)

By **"lining up" with Schulman instead of advocating independently, Cord deprived Plaintiff of the procedural protection that minor's counsel is supposed to provide**—ensuring the child's voice is heard separately from either parent. This coordination transformed what should have been a three-party proceeding (mother, father, child's independent representative) into a two-against-one proceeding (mother + her attorney + child's attorney all aligned against father).

### b. The Fraud Was Retaliatory—Plaintiff "Pissed Them Off"

When Plaintiff asked Investigator Pena what he had done to warrant losing all his parental rights, Pena responded simply: **"You pissed them off."** (Emert Decl. ¶ 14, Ex. P at 92-93.)

The context of the conversation makes clear that "them" refers to **family court lawyers and judges**—including Schulman—who were angry about Plaintiff's aggressive litigation tactics exposing their misconduct in family court filings. Plaintiff had called family court actors corrupt in his pleadings and filed motions exposing judicial conflicts of interest and procedural violations. (Emert Decl. ¶ 14.)

**In retaliation for these litigation tactics, Schulman and other family court actors coordinated to:**

1. Obtain the fraudulent default judgment (November 29, 2021);
2. Pressure the DA's office to file criminal charges; and
3. Use the threat of criminal prosecution to prevent Plaintiff from challenging the fraudulent judgment.

### c. Family Court Lawyers Pressured DA to File Criminal Charges

Investigator Pena explicitly confirmed that family court attorneys were pressuring the District Attorney's office to pursue criminal charges:

> "Well, because they keep pushing our attorneys, **their attorneys keep pushing our attorneys** and our attorneys."

(Emert Decl. ¶ 15, Ex. P at 168.)

Pena also stated:

> "But I I definitely think that now I guess to kind of put it frankly, **the shits hit the fan and they they want to push this.** I don't believe it's the best."

(Emert Decl. ¶ 15, Ex. P at 42-43.)

These admissions prove that:

1. **"Their attorneys"** (family court lawyers including Schulman) were **pushing** the DA's office;

2. The criminal prosecution was not based on merits but on **external pressure** from family court actors; and

3. Even the DA investigator believed the prosecution was inappropriate (**"I don't believe it's the best"**).

### d. DA Should Never Have Taken the Case

Investigator Pena explicitly stated:

> **"The DA's office should never have accepted your case** because he was 14 when this all started on paper."

(Emert Decl. ¶ 16, Ex. P at 154.)

He further characterized the matter as fundamentally a family court dispute, not criminal activity:

> "I don't think he wants to see his dad hauled into court on a criminal case for something like **I think you fighting a family court. That's you as a dad fighting a family court.**"

(Emert Decl. ¶ 16, Ex. P at 167.)

### e. What the Pena Recording Proves About Schulman's Fraud

These recorded admissions from a law enforcement officer provide independent, contemporaneous corroboration of:

1. **Schulman's fraudulent intent**—He was part of a coordinated scheme to "put something together" against Plaintiff, not acting in good faith;

2. **The retaliatory motive**—The fraud was driven by anger that Plaintiff "pissed them off" by exposing misconduct, not by any legitimate concern for the child's welfare;

3. **The pattern of misconduct**—Schulman's submission of false income data was not an isolated incident but part of a broader strategy involving coordination with minor's counsel and pressure on the DA's office; and

4. **Schulman's bad faith**—No attorney coordinating with supposedly independent minor's counsel to "put something together" against the

opposing party, and then pressuring prosecutors to file baseless criminal charges, can claim to be acting in good faith.

**This pattern of bad faith coordination confirms that Schulman's submission of false income data was deliberate fraud, not mistake.**

### 10. Federal Court Proceedings

On **November 4, 2024**, Plaintiff filed this action seeking relief from the fraudulent judgment and an injunction against DCSS enforcement. (ECF No. 1; Emert Decl. ¶ 18, Ex. G.)

On **November 26, 2024**, this Court dismissed the action under the Rooker-Feldman doctrine and domestic relations abstention. (ECF No. 5.)

On **November 27, 2024**, Plaintiff filed a Notice of Appeal to the Ninth Circuit Court of Appeals. That appeal was dismissed on **June 18, 2025**, and the mandate issued on **July 10, 2025**, as Case No. 24-7748. (Emert Decl. ¶ 18.)

On **May 8, 2025**—while Plaintiff's appeal was pending—the Ninth Circuit decided *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025), providing intervening authority directly addressing the jurisdictional question on which this Court dismissed Plaintiff's claims.

## C. LEGAL STANDARD

### 1. Federal Rule of Civil Procedure 60(b)(6)

Federal Rule of Civil Procedure 60(b)(6) permits a court to relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Unlike Rule 60(b)(1)-(3), which have a one-year deadline, Rule 60(b)(6) motions must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

The Ninth Circuit has held that Rule 60(b)(6) relief is appropriate when: (1) "extraordinary circumstances" exist that prevented the party from obtaining a fair adjudication; or (2) intervening changes in controlling law make the original judgment inequitable. *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009); *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 443 (9th Cir. 2019).

Intervening circuit precedent that changes the legal landscape is a recognized ground for Rule 60(b)(6) relief. *See Phelps*, 569 F.3d at 1135 ("A change in decisional law after entry of judgment may constitute 'extraordinary circumstances' and thereby justify Rule 60(b)(6) relief.").

This Motion is timely. The Ninth Circuit mandate issued July 10, 2025. *Miroth* was decided May 8, 2025. This motion, filed November 25, 2025, is filed within a reasonable time of both the mandate and the intervening decision.

## 2. Miroth v. County of Trinity—The Controlling Intervening Authority

In *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025), the Ninth Circuit directly addressed whether federal courts have subject matter jurisdiction over claims alleging that adverse parties committed fraud in state family court proceedings. The court held that Rooker-Feldman does **not** bar such claims.

### The *Miroth* Holding:

"Rooker-Feldman 'applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment.'"

136 F.4th at 1154 (quoting *Kougasian*, 359 F.3d at 1140).

### The Critical Distinction—Adverse Party Misconduct vs. State Court Error:

"Our caselaw has further narrowed the doctrine as applying only to suits alleging errors by the state courts in rendering judgment, **as opposed to misconduct by litigants in obtaining such a judgment.**"

136 F.4th at 1154 (quoting *Cogan v. Trabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024)).

### What Relief Avoids Rooker-Feldman:

The *Miroth* plaintiffs **dropped their request to reinstate parental rights** and instead sought **only money damages**. The Ninth Circuit held this was sufficient to avoid Rooker-Feldman:

"[T]he Miroths' claims in their operative second complaint did not seek relief from or reversal of the state court's order. Rather, they sought **money damages**, asserting that defendants denied them services and made false claims to the court. Because these were legal wrongs by adverse parties that preceded the issuance of the state court order, the Rooker-Feldman doctrine did not apply."

136 F.4th at 1145 (emphasis added).

### Claims Against Parties Who Procured Judgment By Fraud:

"When plaintiffs come to federal court following the completion of state court proceedings and raise allegations that relate to the same subject matter as the state court litigation, the reason for the federal lawsuit, inevitably, is dissatisfaction with the state court's decision.... [But] when a plaintiff complains of harms caused by an adverse party in state court proceedings, the limits on federal courts' ability to grant relief come from doctrines of abstention and comity (if the federal plaintiff and adverse party are simultaneously litigating in state court) or **doctrines of preclusion** (if the state court suit has reached final judgment)."

136 F.4th at 1150-51.

### Extrinsic Fraud and Rooker-Feldman:

"Extrinsic fraud—'conduct which prevents a party from presenting his claim in court'—is a basis for setting aside a prior judgment.... Even though in this situation '[i]t is clear' that 'the plaintiff is seeking to set aside a state court judgment,' Rooker-Feldman still was not implicated because '[e]xtrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud.'"

136 F.4th at 1155-56 (quoting *Kougasian*, 359 F.3d at 1140-41).

### The Dissent's Concern—And Why It Doesn't Apply Here:

Judge VanDyke dissented in *Miroth*, arguing that the plaintiffs had "expressly disclaimed" extrinsic fraud. 136 F.4th at 1162 (VanDyke, J., dissenting). But that is precisely what distinguishes Plaintiff's case: **Plaintiff does NOT disclaim extrinsic fraud—Plaintiff affirmatively alleges it.**

Plaintiff was prevented from presenting his case by:

- A near-fatal heart attack (Ex. B)
- Seven documented attempts to participate, all ignored or denied (Exs. I, J, K, L, M, N, O)
- Schulman's motion to exclude his evidence filed while Plaintiff was medically incapacitated (Ex. O)
- Denial of his ex parte application the morning of trial (Ex. L)

This is textbook extrinsic fraud under *Miroth* and *Kougasian*.

### 3. Extrinsic vs. Intrinsic Fraud

The distinction between extrinsic and intrinsic fraud is critical to Rooker-Feldman analysis:

**Extrinsic Fraud** (Does NOT implicate Rooker-Feldman): > "Conduct which prevents a party from presenting his claim in court."

*Kougasian*, 359 F.3d at 1140. Examples include: - Hiding witness identities from opponent - Failing to make mandatory disclosures - Preventing party from attending trial through fraud or concealment - *Benavidez v. County of San Diego*, 993 F.3d 1134, 1143-44 (9th Cir. 2021)

**Intrinsic Fraud** (May implicate Rooker-Feldman if party had opportunity to rebut): > "Fraud that goes to the very heart of the issues contested in the state court action" where the plaintiff "clearly had an opportunity to present their claim and rebut the supposed fraud."

*Miroth*, 136 F.4th at 1166-67 (VanDyke, J., dissenting) (quoting *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978)).

**Plaintiff's Case Involves Extrinsic Fraud:**

Unlike *Miroth*, where the plaintiffs had the opportunity to participate in state court and rebut false statements, Plaintiff was **systematically excluded** from the November 29, 2021 trial:

| Attempt | Date | Action | Result |
|---------|------|--------|--------|
| 1 | Sept 30, 2021 | ER email to all parties | Ignored |
| 2 | Nov 10, 2021 | ADA accommodation request | Ignored |
| 3 | Nov 15, 2021 | Doctor's note to all parties | Ignored |
| 4 | Nov 22, 2021 | Continuance request under CRC 3.1332 | Ignored |
| 5 | Nov 23, 2021 | — | Schulman files motion to exclude Plaintiff's evidence |
| 6 | Nov 24, 2021 | Ex parte application | Denied morning of trial |

| Attempt | Date | Action | Result |
|---------|------|--------|--------|
| 7 | Nov 29, 2021 | Morning email asking for access | No response; trial proceeds |

Plaintiff never had the opportunity to rebut Schulman's false income representations. **This is extrinsic fraud.**

## D. ARGUMENT

### 1. Miroth Is Intervening Law That Changes the Jurisdictional Analysis

This Court dismissed Plaintiff's claims under the Rooker-Feldman doctrine, finding that Plaintiff was impermissibly seeking federal review of a state court judgment. (ECF No. 5.) *Miroth* now clarifies that Rooker-Feldman does not apply to claims that adverse parties—not the state court—committed fraud.

Plaintiff's claims are precisely the type *Miroth* holds are within federal jurisdiction:

- Plaintiff does not allege the state court judges made errors—he alleges that **Schulman, Bear, and Andrea Schuck committed fraud** by knowingly submitting false income data;
- The fraud **preceded the state court judgment** and was an independent legal wrong;
- The fraud was **extrinsic**—it prevented Plaintiff from presenting his case;
- Plaintiff seeks **money damages and injunctive relief**, not reversal of the state judgment;
- Federal jurisdiction exists to remedy fraud by adverse parties, even when that fraud influenced the state court's decision.

*Miroth* represents a significant clarification of Rooker-Feldman that directly undermines the basis for this Court's dismissal. This intervening law constitutes an "extraordinary circumstance" warranting Rule 60(b)(6) relief.

### 2. Plaintiff's Claims Fall Squarely Within Miroth

#### a. Plaintiff Alleges Misconduct By Adverse Parties, Not Error By the State Court

As *Miroth* instructs:

"If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. **If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.**"

136 F.4th at 1150 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).

Plaintiff does not allege the state court judges made legal errors. Plaintiff alleges that:

1. **David S. Schulman** knowingly submitted false income data ($8,010/month) despite documented knowledge of Plaintiff's unemployment;
2. **Sara Bear** (co-counsel) participated in this fraud;
3. **Andrea Schuck** (adverse party) benefited from and participated in the fraud;
4. **All three** concealed exculpatory evidence (the DissoMaster calculation) that would have exposed the fraud; and
5. **All three** prevented Plaintiff from participating through systematic denial of continuances and accommodations despite his medical emergency.

These are "legal wrongs by adverse parties that preceded the issuance of the state court order." *Miroth*, 136 F.4th at 1145.

### b. Plaintiff Seeks Money Damages, Not Reversal of the State Judgment

Under *Miroth*, the critical question is what relief the plaintiff seeks. The *Miroth* plaintiffs avoided Rooker-Feldman by:

"[D]ropp[ing] any request to reinstate their parental rights. Instead, they sought **only money damages** under § 1983 and state law."

136 F.4th at 1146.

Similarly, Plaintiff here does NOT ask this Court to: - ~~Reverse the state court judgment - Reinstate custody or parental rights - Declare the state judgment "void" or "voidable" - Set aside the state court order~~

Instead, Plaintiff seeks:

√ **Money damages** against Schulman, Bear, and Schuck for fraud and civil rights violations √ **Injunctive relief** against DCSS to halt enforcement of the fraudulently-obtained support order √ **Declaratory relief** that extrinsic fraud occurred

This is precisely the relief *Miroth* holds is within federal jurisdiction.

## c. The Fraud Was Extrinsic—Plaintiff Was Prevented From Participating

Unlike the *Miroth* plaintiffs—who participated in state court and had the opportunity to rebut false statements—Plaintiff was **systematically excluded** from the November 29, 2021 trial.

This is the key distinction between Plaintiff's case and the concern raised by Judge VanDyke in dissent. Judge VanDyke argued that Rooker-Feldman should apply where plaintiffs "expressly disclaim[] any extrinsic fraud." 136 F.4th at 1162. **Plaintiff does not disclaim extrinsic fraud—Plaintiff affirmatively alleges it.**

The evidence of extrinsic fraud is overwhelming:

- **Heart attack** prevented physical attendance (Ex. B)
- **Seven documented requests** for continuance/accommodation, all ignored or denied (Exs. C, I, J, K, L, M, N)
- **Schulman's motion to exclude** Plaintiff's evidence, filed while Plaintiff was incapacitated (Ex. O)
- **Denial of ex parte** the morning of trial (Ex. L)
- **No response** to morning-of-trial email (Ex. M)

Plaintiff never had an opportunity to rebut Schulman's false income representations because **Plaintiff was not present and could not participate**. This is textbook extrinsic fraud under *Kougasian* and *Benavidez*.

### 3. Rooker-Feldman Does Not Apply

### a. The Doctrine's Limited Scope

As *Miroth* emphasizes, Rooker-Feldman is "narrow":

> "The Supreme Court has found that the doctrine precluded jurisdiction only twice…. [T]he cases repeatedly drive this point home…. '[T]he cases since Feldman have tended to emphasize the narrowness of the Rooker-Feldman rule.'"

136 F.4th at 1159 (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

> "[D]istrict courts should keep one thing in mind when Rooker-Feldman is raised: **it will almost never apply**."

*Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) (quoted in *Miroth*, 136 F.4th at 1159).

## b. Rooker-Feldman Is Not Preclusion By Another Name

*Miroth* emphasizes that Rooker-Feldman and preclusion are "analytically distinct":

> "Rooker-Feldman is a jurisdictional doctrine, whereas preclusion is not....
> Equating Rooker-Feldman with preclusion 'risks turning th[e] limited
> [Rooker-Feldman] doctrine into a uniform federal rule governing the
> preclusive effect of state-court judgments,' contrary to 28 U.S.C. § 1738."

136 F.4th at 1151 (quoting *Lance*, 546 U.S. at 466).

This means that even if Plaintiff's claims might face preclusion obstacles, the Court has **subject matter jurisdiction** to hear them. Preclusion is a merits defense—not a jurisdictional bar.

## c. Domestic Relations Exception Does Not Apply

The domestic relations exception to federal jurisdiction is narrow and applies only when a federal court is asked to issue a divorce decree, determine child custody, or award child support. *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992).

Plaintiff does not ask this Court to make custody or support determinations. Plaintiff asks this Court to:

- Award money damages for fraud
- Enjoin enforcement of a fraudulently-obtained order
- Declare that fraud occurred

This is a federal fraud and civil rights claim—not a domestic relations matter.

## 4. Extraordinary Circumstances Warrant Relief

Independent of intervening law, the documented fraud presents extraordinary circumstances justifying relief under Rule 60(b)(6). The Ninth Circuit has recognized that fraud by opposing parties can constitute extraordinary circumstances. *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).

The evidence of fraud here is not circumstantial—it comes from **the perpetrator's own written admissions**:

**Documentary Evidence of Fraud:**

| Evidence | Content | Significance |
|----------|---------|--------------|
| **Ex. E** | Schulman's Feb 2021 memo | Admits unemployment, lapsed licenses |
| **Ex. H** | Schulman's Oct 2021 email | "you do not even have one [job]" |

| Evidence | Content | Significance |
|----------|---------|--------------|
| **Ex. A** | Default judgment | $8,010/month imputation |
| **Ex. F** | Feb 2022 e-service | DissoMaster omitted |
| **Ex. P** | Pena recording | Independent corroboration of scheme |

The timeline is devastating:

> Schulman admits unemployment in **February 2021** (Ex. E), confirms it again in **October 2021** (Ex. H), then submits $8,010/month imputation in **November 2021** (Ex. A) based on the same employment he twice admitted did not exist.

**This constitutes clear and convincing evidence of deliberate fraud with knowing intent.**

### 5. Due Process Violation

The systematic exclusion of Plaintiff from the November 29, 2021 trial violated fundamental due process.

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process requires "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

In *Armstrong v. Manzo*, 380 U.S. 545 (1965), the Supreme Court held:

> "The fundamental requisite of due process of law is the opportunity to be heard. This right has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."

*Id.* at 552.

Plaintiff was informed of the trial date but was **systematically prevented from participating** despite:

- Life-threatening medical emergency (Ex. B)
- Immediate notice to opposing counsel (Ex. C)
- Doctor's recommendations for remote participation (Exs. I, J)
- Explicit requests for continuance citing cardiac issues (Exs. K, L)
- Morning-of-trial attempt to gain access (Ex. M)

**All requests were ignored or denied.** The trial proceeded in Plaintiff's absence, resulting in a judgment imposing approximately $2,000/month support based on false income data.

This violated Plaintiff's constitutional right to be heard. *Armstrong*, 380 U.S. at 552.

### 6. DCSS's Continued Enforcement Violates Title IV-D

The Department of Child Support Services has enforced the fraudulent child support order for nearly three years despite receiving at least twelve written requests for administrative review under 45 CFR § 303.8(b)(2), including:

- Schulman's February 2021 memo admitting unemployment and lapsed licenses (Ex. E)
- Schulman's October 2021 "no job" email (Ex. H)
- Medical records documenting heart attack (Ex. B)
- Proof of Plaintiff's decade-long status as stay-at-home father

(Emert Decl. ¶ 10, Ex. D.)

**DCSS has ignored or summarily denied every request.** By continuing to enforce a judgment it knows (or should know) is based on false income data, **DCSS has violated its mandatory Title IV-D obligations** to review and modify support orders based on changed circumstances. 45 CFR § 303.8(b)(2).

While Title IV-D may not create a private right of action for damages, it does create enforceable rights for injunctive relief to compel compliance with federal procedures. *Blessing v. Freestone*, 520 U.S. 329 (1997). This Court has authority to enjoin DCSS from enforcing the fraudulent judgment pending resolution of this matter.

---

## E. CONCLUSION

*Miroth v. County of Trinity* is directly on point. The Ninth Circuit held that federal courts have subject matter jurisdiction over claims alleging that adverse parties committed fraud in state family court proceedings—**the precise jurisdictional issue on which this Court dismissed Plaintiff's claims.**

Under *Miroth*, Plaintiff's claims are within this Court's jurisdiction because:

1. Plaintiff alleges **misconduct by adverse parties** (Schulman, Bear, Schuck)—not error by the state court;

2. Plaintiff seeks **money damages and injunctive relief**—not reversal of the state judgment;

3. The fraud was **extrinsic**—Plaintiff was prevented from participating, not merely unsuccessful in rebutting false statements; and

4. These are **independent legal wrongs** that preceded the state court order.

The evidence is irrefutable and comes from multiple independent sources:

**Schulman's Own Words:** - **February 2021:** Admits lapsed licenses and unemployment (Ex. E) - **October 2021:** Confirms "you do not even have one [job]" (Ex. H) - **November 2021:** Secures $8,010/month imputation anyway (Ex. A) - **February 2022:** Office conceals DissoMaster calculation (Ex. F)

**Plaintiff's Exclusion From Trial (Extrinsic Fraud):** - Seven documented attempts between Sept 30 and Nov 29, 2021 (Exs. C, I, J, K, L, M, N, O) - All ignored or denied despite life-threatening medical emergency

**Independent Law Enforcement Corroboration:** - DA Investigator Pena admits they "lined up" and were "trying to put something together" (Ex. P) - Pena admits retaliation: "You pissed them off" (Ex. P) - Pena admits "DA's office should never have accepted your case" (Ex. P)

**The fraud is clear. The evidence is overwhelming. The law enforcement corroboration is devastating. *Miroth* provides the jurisdictional foundation. Justice requires relief.**

---

## F. RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter an order:

### 1. Vacating the Dismissal Under FRCP 60(b)(6)

Vacating this Court's November 26, 2024 Order dismissing this action (ECF No. 5) based on the Ninth Circuit's intervening decision in *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025).

### 2. Reopening This Case

Reopening Case No. 3:24-cv-02072-CAB-JLB and restoring it to the active docket.

### 3. Granting Leave to Amend

Granting Plaintiff leave to file an Amended Complaint asserting claims for **money damages** against:

a. **David S. Schulman** for fraud, abuse of process, and civil rights violations under 42 U.S.C. § 1983;

b. **Sara Bear** for fraud, abuse of process, and civil rights violations under 42 U.S.C. § 1983; and

c. **Andrea Schuck** for fraud and conspiracy.

## 4. Declaratory Relief

Declaring that:

a. David S. Schulman, Sara Bear, and Andrea Schuck committed **extrinsic fraud** that prevented Plaintiff from presenting his case in the November 29, 2021 state court trial;

b. The systematic exclusion of Plaintiff from the November 29, 2021 trial violated Plaintiff's constitutional right to due process under the Fourteenth Amendment; and

c. This Court has subject matter jurisdiction over Plaintiff's claims under *Miroth v. County of Trinity.*

## 5. Preliminary Injunctive Relief Against DCSS

Issuing a preliminary injunction enjoining the California Department of Child Support Services from:

a. Enforcing the child support order based on the fraudulent $8,010/month income imputation;

b. Continuing collection activities pending resolution of this matter;

c. Reporting adverse credit information based on the fraudulent support obligation; and

d. Taking any enforcement action until Plaintiff's claims are adjudicated.

## 6. Permanent Injunctive Relief Against DCSS

Following adjudication, issuing a permanent injunction requiring DCSS to:

a. Recalculate Plaintiff's child support obligation based on his actual income;

b. Credit Plaintiff's account for overpayments made based on the fraudulent judgment; and

c. Correct any adverse credit reporting.

## 7. Costs

Awarding Plaintiff his costs of suit.

## 8. Such Other Relief

Granting such other and further relief as the Court deems just and proper.

**DATED:** November 25, 2025

Respectfully submitted,

/s/ Robert Emert **ROBERT EMERT** Plaintiff, Pro Se 2351 Vista Lago Terrace Escondido, CA 92029 Tel: (760) 612-9328 Email: robemert@msn.com

## III. DECLARATION OF ROBERT EMERT IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT

I, Robert Emert, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

### BACKGROUND AND EMPLOYMENT STATUS

1. I am the Plaintiff in this action and the Respondent in the underlying San Diego County Superior Court divorce case, *In re Marriage of Emert*, Case No. 19FL010852N. I have personal knowledge of the facts stated herein, except as to those matters stated on information and belief, and if called as a witness, I could and would testify competently thereto.

2. Prior to and during the family court proceedings, I was unemployed and had been serving as a stay-at-home father for nearly a decade. I was the primary caregiver for our son Bryce, who has autism spectrum disorder. I transitioned to being a stay-at-home father beginning around 2012. My California real estate license and contractor's license had lapsed years earlier due to non-use. I had no current income. Family Court Services consistently recommended a 50/50 custody arrangement for approximately two years during the divorce proceedings (2019-2021).

### SCHULMAN'S DOCUMENTED KNOWLEDGE OF MY UNEMPLOYMENT

3. On February 24, 2021, David S. Schulman—attorney for my ex-wife Andrea Schuck—filed a memorandum with the San Diego County Superior Court explicitly acknowledging that my real estate license had lapsed, my contractor's license had lapsed, and I had not worked. A true and correct copy of this memorandum is attached as **Exhibit E**.

4. On October 20, 2021—forty days before the November 29, 2021 trial— Mr. Schulman sent me an email stating: "Mr. Emert, I find it Ironic that you of all people are telling someone to do their job when you do not even have one." A true and correct copy of this email is attached as **Exhibit H**.

## MY MEDICAL EMERGENCY

5. On September 29, 2021, I suffered a STEMI (ST-Elevation Myocardial Infarction) heart attack—a life-threatening cardiac event. I was rushed to the emergency room and remained hospitalized for several days. A true and correct copy of medical records documenting this cardiac event is attached as **Exhibit B**.

6. On September 30, 2021—while still in the emergency room—I sent an email to Mr. Schulman, his co-counsel Sara Bear, and the court notifying them of my medical emergency. On October 4, 2021, the court acknowledged my heart attack and stated this was "merely a continuance to give father the ability to present his case." A true and correct copy of my ER email is attached as **Exhibit C**. A true and correct copy of the October 4, 2021 minute order is attached as **Exhibit N**.

## MY ATTEMPTS TO PARTICIPATE (EXTRINSIC FRAUD)

7. Between September 30, 2021 and November 29, 2021, I made at least seven documented attempts to participate in the proceedings, request accommodations, and obtain a trial continuance. These included:

   - **November 10, 2021:** ADA accommodation request with doctor's recommendation (**Exhibit I**)
   - **November 15, 2021:** Doctor's note sent to all parties (**Exhibit J**)
   - **November 22, 2021:** Trial continuance request citing "cardiac issues from recent heart attack" (**Exhibit K**)
   - **November 24, 2021:** Formal ex parte application under California Rule of Court 3.1332 (**Exhibit L**)
   - **November 29, 2021:** Morning-of-trial email asking "Am I being admitted?" (**Exhibit M**)

Every attempt was ignored or denied. On November 23, 2021, Mr. Schulman's office filed a motion in limine to exclude my evidence (**Exhibit O**), demonstrating intent to proceed despite my medical emergency. I never had the opportunity to rebut Mr. Schulman's false income representations because I was excluded from the trial entirely.

## THE FRAUDULENT DEFAULT JUDGMENT

8. On November 29, 2021, the San Diego County Superior Court conducted a default trial in my absence. Despite Mr. Schulman's documented knowledge that I was unemployed with lapsed licenses, he submitted evidence resulting in an income imputation of $8,010 per month. The January 24, 2022 judgment imposed child support obligations of approximately $1,714 per month based on income I never earned and could not earn. A true and correct copy of the default judgment is attached as **Exhibit A**.

## CONCEALMENT OF THE DISSOMASTER CALCULATION

9. On February 9, 2022, Mr. Schulman's office served the judgment on me via email. The DissoMaster calculation—the mandatory California software tool for calculating child support, which would have shown my actual income as $0—was deliberately omitted from the documents served. This concealment prevented me from immediately identifying the fraudulent income imputation. A true and correct copy of the e-service email showing the omission is attached as **Exhibit F**.

## DCSS'S REFUSAL TO REVIEW

10. Since January 24, 2022, the California Department of Child Support Services (DCSS) has enforced the fraudulent child support order. Between 2022 and 2024, I sent at least twelve written requests to DCSS for administrative review, providing Mr. Schulman's February 2021 memo, his October 2021 email, my medical records, and evidence of my decade-long status as stay-at-home father. DCSS has ignored or summarily denied every request. True and correct copies of representative DCSS correspondence are attached as **Exhibit D**.

## LAW ENFORCEMENT CORROBORATION OF THE FRAUD

11. I had a recorded conversation with Deputy District Attorney Investigator Luis Pena regarding criminal charges that had been threatened against me in connection with the custody dispute.

12. During that conversation, Investigator Pena stated that minor's counsel Matthew Cord "lined up with your ex-wife" and Mr. Schulman rather than independently advocating for my son. He stated: "I personally don't like some of them they really. They have biases because they'll start because right now I think they lined up with your ex-wife. I don't believe they're strictly just by themselves trying to do the best for him [Bryce]. I think now they line together with your basically ex wives attorney and now they're trying to put something together." (**Exhibit P** at 45.)

13. Investigator Pena further stated that minor's counsel should have been talking to me rather than coordinating exclusively with opposing counsel: "It's like that attorney should be talking to you. It they should not just be trying to figure things out with other attorney and pushing, pushing and pushing and pushing." (**Exhibit P** at 45-46.)

14. When I asked Investigator Pena what I had done to warrant losing all my parental rights, he responded: "You pissed them off." (**Exhibit P** at 92-93.) The context of our conversation made clear that "them" refers to family court lawyers and judges—including Mr. Schulman.

15. Investigator Pena confirmed that family court attorneys were pressuring the District Attorney's office to file criminal charges: "Well, because they keep pushing our attorneys, their attorneys keep pushing our attorneys and our attorneys." (**Exhibit P** at 168.) He also stated: "But I I definitely think that now I guess to kind of put it frankly, the shits hit the fan and they they want to push this. I don't believe it's the best." (**Exhibit P** at 42-43.)

16. Investigator Pena explicitly stated: "The DA's office should never have accepted your case because he was 14 when this all started on paper." (**Exhibit P** at 154.) He characterized the matter as fundamentally a family court dispute: "I don't think he wants to see his dad hauled into court on a criminal case for something like I think you fighting a family court. That's you as a dad fighting a family court." (**Exhibit P** at 167.)

17. These recorded admissions from a law enforcement officer provide independent corroboration that: (a) Mr. Schulman's submission of false income data was part of a coordinated scheme to "put something together" against me; (b) the coordination included Mr. Schulman working with minor's counsel who was supposed to be independent; (c) the entire scheme was retaliatory; and (d) even the DA investigator believed there was no legitimate basis for the actions taken against me.

## FEDERAL COURT PROCEEDINGS

18. On November 4, 2024, I filed this action in federal court seeking relief from the fraudulent judgment and an injunction against DCSS enforcement. A true and correct copy of the original complaint is attached as **Exhibit G**. On November 26, 2024, this Court dismissed the action under the Rooker-Feldman doctrine and domestic relations abstention. On November 27, 2024, I filed a Notice of Appeal to the Ninth Circuit Court of Appeals. That appeal was dismissed on June 18, 2025, and the mandate issued on July 10, 2025, as Case No. 24-7748.

On May 8, 2025—while my appeal was pending—the Ninth Circuit decided *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025), providing intervening authority that clarifies federal jurisdiction over fraud claims against adverse parties in family court proceedings.

## EXHIBITS

19. The following exhibits are attached to this Declaration and incorporated by reference:
- **Exhibit A:** January 24, 2022 Default Judgment showing $8,010/month income imputation
- **Exhibit B:** Medical records documenting September 29, 2021 STEMI heart attack
- **Exhibit C:** September 30, 2021 ER email to Schulman and Bear
- **Exhibit D:** DCSS correspondence (12+ ignored review requests, 2022-2024)
- **Exhibit E:** Schulman's February 24, 2021 memorandum admitting unemployment and lapsed licenses
- **Exhibit F:** February 9, 2022 e-service email showing DissoMaster omitted
- **Exhibit G:** Original Complaint (November 4, 2024)
- **Exhibit H:** Schulman's October 20, 2021 "Get a Job" email
- **Exhibit I:** November 10, 2021 ADA accommodation request with doctor's note
- **Exhibit J:** November 15, 2021 email with doctor's note to all parties
- **Exhibit K:** November 22, 2021 trial continuance request citing "cardiac issues"
- **Exhibit L:** November 24, 2021 ex parte application under CRC 3.1332
- **Exhibit M:** November 29, 2021 morning-of-trial email
- **Exhibit N:** October 4, 2021 minute order acknowledging heart attack

- **Exhibit O:** November 23, 2021 Schulman's Motion in Limine
- **Exhibit P:** Transcript excerpts from recorded conversation with DA Investigator Luis Pena

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 25, 2025, at Escondido, California.

/s/ Robert Emert **ROBERT EMERT**

---

## PROOF OF SERVICE

I, Robert Emert, declare:

I am over the age of 18 years and not a party to this action. My address is 2351 Vista Lago Terrace, Escondido, CA 92029.

On November 25, 2025, I served the foregoing PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) BASED ON INTERVENING NINTH CIRCUIT AUTHORITY AND EXTRAORDINARY CIRCUMSTANCES, together with the Declaration of Robert Emert and Exhibits A-P, on the following parties by the method indicated:

**California Department of Child Support Services** c/o California Attorney General's Office 600 West Broadway, Suite 1800 San Diego, CA 92101

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**David S. Schulman, Esq.** Email: dschulman@msmfamilylaw.com

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**Sara Bear, Esq.** Email: sbear@msmfamilylaw.com

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**Andrea Schuck** Email: aemert@carlsbadusd.net

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**Erik Welton (DCSS)** Email: erik.welton@sdcounty.ca.gov

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**Office of Inspector General, HHS** Email: HHSTips@oig.hhs.gov

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

**Office of Child Support Enforcement (OCSE)** Email: OCSE.Complaints@acf.hhs.gov

☐ By U.S. Mail ☒ By Electronic Mail ☐ By Hand Delivery

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 25, 2025, at Escondido, California.

/s/ Robert Emert **ROBERT EMERT**

---

## [EXHIBITS FILED UNDER SEPARATE COVER]